HALL, Judge.
The State of Louisiana, Through the Department of Highways brought this suit to expropriate in full ownership for highway purposes a certain portion of the rear of a parcel of land owned by Mrs. Louise Bradbury Jacques and Mrs. Hilda Jacques Mitchell. The property was under lease to Humble Oil & Refining Company and that company was also made a party defendant. The order of expropriation was dated and signed March 26, 1963 and on the same date the Highway Department, in accordance with the order, deposited the sum of $12,900.00 (being the valuation placed on the property by the Department’s appraisers) in the Registry of the Court for the benefit of the person or persons entitled thereto. The $12,900.00 was deposited as just and adequate compensation for the property expropriated, no amount being deposited for severance damage.
Mrs. Louise Bradbury Jacques and Mrs. Hilda Jacques Mitchell (hereinafter referred to as “defendants”) filed an answer to the suit on March 17, 1964. No answer was filed by the lessee, Humble Oil and Refining Company, and it did not participate in the trial of the case. In their answer, defendants averred that the portion of property taken had a market value of $16,550.00, and further averred that “by taking the said portion of property, the remainder of the property will be depreciated and damaged due to said taking by the sum of $8,899.00,” thus asserting a total claim of $25,449.00.
Plaintiff filed an exception of vagueness to defendants’ answer on the ground that defendants had not itemized their claim for damages as required by LSA-R.S. 48:451. The exception was overruled, and following trial on the merits, which took place on December 8, 9, 1965, judgment was rendered in favor of the State of Louisiana, Through the Department of Highways, and against the defendants, sustaining and confirming the amount of $12,900.00 deposited by the State in the Registry of the Court as the value of the property expropriated and', as just and fair compensation therefor.. Defendants appealed.
The property taken by the State is a portion off the rear of a piece of property belonging to defendants located at the northwest corner of Chef Menteur Highway and Downman Road in the City of New Orleans. This property measured' 107.9 feet front on the outbound lane of Chef Menteur Highway, the same width in the rear, and had a depth on its western-side line of 203.4 feet and a depth on its-eastern side line and front on Downman-Road of 203.4 feet. The property contained' an area of 21,693 square feet. The parcel expropriated was, as stated, located at the rear of the whole property and is generally triangular in shape. It measures 78.04-feet on Downman Road forming one leg’ of the triangle, the other leg of the triangle-being the rear line of the whole property. The hypoteneuse of the triangle is a slightly curved line which runs to a point practically at the southwest corner of the-whole property. The part taken contains-3310.56 square feet.
The front portion of defendants’ property was occupied by a filling station,, which was in no way involved by the taking. The only improvements situated on. the portion expropriated consisted of a small two room frame building and 107 feet, of chain link fence. The $12,900.00 deposited by the State in the Registry of the-Court was made up of $11,920.00 for the-land taken, $872.00 for the small frame building and $107.00 for the fence. The latter two items are not in dispute.
Prior to the taking the operator of the filling station had permitted a truck operator to use the rear area for the storage and servicing of large diesel trucks and had' furnished him with the small frame building without any rental charge in consideration of the truck operator purchasing oil and gas from the filling station. In addition the filling station operator, as the-representative of a trailer company, had *416 used this area to park small trailers which he rented to other parties. The area used for these purposes was the same area, approximately as that expropriated.
On the trial of the case defendants adduced the testimony of Mr. Paul Caruso as their only expert appraiser. Mr. Caruso stated that he had been a real estate broker and appraiser for thirty years and that he had been particularly familiar with the area of Gentilly and Downman Road for the past ten or fifteen years; that he was familiar with defendants’ property both from prior knowledge and from having examined it for the purposes of this suit. Mr. Caruso further testified that all of the property in the vicinity had been owned by the same people for a good many years and that he was unable to find any comparable •sales. Based solely on his general knowledge and experience in the real estate business he appraised the whole of defendants’ property at $5.00 per square foot. He likewise appraised the part taken at $5.00 a •square foot or $16,650.00.
As to damage to the remaining property •caused by the taking Mr. Caruso testified ■in part as follows:
“Q. By virtue of the elimination of that seventy-five feet area in the rear has the availability of that property for its use as a truck terminal and servicing station been in any way depreciated or hampered?
A. It did depreciate the property.
* * * * * *
Q. Now, then you stated that by taking off this rear portion you would depreciate the value of the remaining property ?
A. You would.
******
Q. To that residual value of property, do you find and believe that there is a depreciation because of the taking of the rear portion?
A. There is.
Q. Approximately what would you say that depreciation is to the remaining property?
A. Well, I figure it around ten per cent.
Q. About ten per cent, so you would say then the remaining property would depreciate approximately $12,045.00?
A. About, yes.”
The above is the total sum and substance of Mr. Caruso’s testimony on the question of residual damage. Nowhere does he state the reason why he considered the remaining property to have been damaged by the taking and nowhere does he give any basis for estimating the damage at 10%. The impression we have gotten from his testimony is that he considered the remaining property to have suffered damage simply as a result of its reduction in size. He particularly made no mention of any loss or reduction of ingress and egress to and from the property.
In summation Mr. Caruso estimated the value of the part taken at $16,550.00 and the amount of severance damage at $12,045.00 making a total of $28,595.00, which is somewhat more than the $25,449.00 prayed for by defendants.
At the conclusion of Mr. Caruso’s testimony, defendants rested their case in chief.
The Department of Highways placed two experts on the witness stand, Mr. L. X. La-mulle, an appraisal expert, and Mr. George Doyle, a civil engineer.
Mr. Lamulle testified that he had been in the real estate appraisal business twenty-seven or twenty-eight years, was thoroughly familiar with the area in question, and had appraised the subject property for the Department of Highways. He appraised both the whole property and the part taken *417 at $3.60 a square foot which resulted in a valuation of $11,920.00 (in round figures) placed by him on the part taken; which together with the values placed by him on the small frame building ($872.00) and the chain link fence ($107.00) makes up the amount of $12,900.00 deposited in the Registry of the Court.
Mr. Lamulle gave very detailed testimony, predicating his appraisal on four sales which he used as comparables by making necessary adjustments for depth, location etc. However he stated quite frankly that none of them were true comparables. On the other hand he stated that there were no comparable sales available which would support Mr. Caruso’s valuation of $5.00 per square foot.
As to severance damage Mr. Lamulle testified that in his opinion none had been sustained by the remainder of the property as a result of the taking, and therefore included no amount for such damages in the appraisal made.
On cross-examination of Mr. Lamulle defendants’ attorney, for the first time, raised the question of the impairment of ingress to and egress from the property by the Department’s construction of a six inch vertical “barrier type” curb along Down-man Road and along the curved portion in the rear of the property. Mr. Lamulle testified that in his opinion the Department of Highways would permit entrances to the property if applied for. If not, he felt that the damage would be minor. He would not hazard a percentage-wise guess as to the damage stating: “It is difficult to guess whether or not there would be any damage.”
Mr. George Doyle, the project engineer for this particular highway construction, testifying on behalf of the Department of Highways, stated that the final plans of this project did not indicate control of access at any point along the subject property and that the owner of the subject property could apply for permission to cut a driveway anywhere along the side and rear of the property. He further testified that he knew of no occasion where the Department had ever refused anyone access to an uncontrolled access highway such as this. The witness stated that as a matter of fact the defendants had already secured two driveway entrances to the property from Downman Road.
In his written “Reasons for Judgment” the Trial Judge, after briefly reviewing the testimony and after finding that there were no true comparable sales to guide him, said:
“The difficulty with Mr. Caruso’s testimony is that he simply states, ‘this is my idea, I’m a realtor and appraiser, and I think it’s worth $16,500’, whereas Mr. Lamulle approached it from a scientific study and came up with the figure of $11,920.00, with an allowance for a building, bringing the total up to $12,920.00.
“As the Court has said, the testimony of Mr. Lamulle was detailed, he used comparables whereas Mr. Caruso had none. Under the circumstances, the Court can do naught but affirm the amount previously put into the Registry of the Court of $12,900.00. Insofar as consequential damages are concerned, the Court is of the opinion that it will have to rely again upon the testimony of Mr. Lamulle to the effect that the property was not damaged, but that it was enhanced.”
The provisions of the statute under which this suit was instituted include LSA-R.S. 48:453 which reads as follows:
“The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
“Damage to the remainder of the property is determined as of the date of the trial.
*418 “In either event the defendant has the burden of proving his claim.” (Emphasis Supplied)
As a result of the statute the defendant owner must “produce convincing evidence that the value of the property taken is in excess of that shown in the estimate on which the Highway Department has made the deposit.” (See State of Louisiana, Through the Department of Highways v. Rownd, La.App., 119 So.2d 282, 288; State of Louisiana, Through the Department of Highways v. Richard, La.App., 135 So.2d 319, 322; State of Louisiana, Through the Department of Highways v. Kurtz, La.App., 143 So.2d 761, 769) The same rule is applicable when the defendant owner claims severance damages in excess of the amount thereof shown in the Department’s certification of such estimated damages. (See State of Louisiana, Through the Department of Highways v. Baddock, La.App., 170 So.2d 5, 14; see also Central Louisiana Electric Company Inc. v. Dunbar, La.App., 183 So.2d 111, 117; State of Louisiana, Through the Department of Highways v. Marks Trustee, 188 So.2d 653, 656).
This case presents solely a question of fact (see State of Louisiana, Through the Department of Highways v. Cenco Inc., La.App., 187 So.2d 162, 164; State of Louisiana, Through the Department of Highways v. Gielen, La.App., 184 So.2d 737, 739).
In expropriation proceedings where there are no comparable sales to use as a criterion in valuing the property the Court is required to determine the weight to be given to the evidence of both plaintiff and defendant in order to arrive at the value of the property expropriated. (See State of Louisiana, Through the Department of Highways v. Barrow, 238 La. 887, 116 So.2d 703, 707).
“ * * * If evidence of similar sales is not available, the value of the land expropriated must be determined by other means, generally the testimony of experts. The rule here is that the testimony of each expert should be given effect if that testimony appears to be well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded.” State of Louisiana, Through the Department of Highways v. Levy, 242 La. 259, 136 So.2d 35, 39, 40.
The only evidence we have as to the value of the property taken is the testimony given by Mr. Lamulle and Mr. Caruso and we find no manifest error in the fact that the Trial Judge gave more weight to the testimony of Mr. Lamulle than to that given by Mr. Caruso. In fact we agree with his appreciation of their testimony.
We are of the opinion that defendants have not produced any convincing evidence that the value of the property taken is in excess of the estimate placed thereon by the appraisers for the Department of Highways on the basis of which the deposit was made.
We are likewise of the opinion that defendants have not produced any convincing evidence that the remaining property suffered any severance damage. Mr. Caruso gave no basis or reason whatever for his statement that the property had suffered severance damages amounting to $12,045.00, nor even any basis for a finding that it had suffered any damage at all. Defendants’ counsel laid much stress both in his argument and brief that defendants’ property had been damaged by a denial of ingress and egress to and from the remaining property. The record does not in our opinion sustain counsel’s contention, but assuming arguendo that the property suffered some damage thereby the record contains no estimate of the monetary amount thereof. The only estimate of severance damage contained in the record is Mr. Caruso’s *419 estimate of $12,045.00 and he did not even mention ingress and egress.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.